IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID HACKBART, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 2:07cv157 |
| ) | **Electronic Filing** |
| THE CITY OF PITTSBURGH, and SGT. ) | |
| BRIAN ELLEDGE, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION

March 23, 2009

**I.    INTRODUCTION**

Plaintiff, David Hackbart ("Hackbart"), filed the instant action pursuant to 42 U.S.C. § 1983, alleging violation of his rights under the First, Fourth and Fourteenth Amendments to the Constitution of the United States by Defendants, the City of Pittsburgh (the "City") and Sergeant Brian Elledge ("Elledge"). The parties have filed cross-motions for summary judgment, and the matter is now before the Court.

**II.    STATEMENT OF THE CASE**

On April 10, 2006, Hackbart was traveling along Murray Avenue in the Squirrel Hill section of the City of Pittsburgh, looking for a place to park his vehicle when he saw an open metered parking space. Plaintiff's Concise Statement of Undisputed Fact (hereinafter "Pl. CSUF") ¶¶ 2 - 4; Defendants' Concise Statement of Material Facts (hereinafter "Def. CSMF") ¶ 1. As Hackbart was attempting to back into the parking space, a vehicle pulled up behind him and effectively blocked Hackbart's entry into the parking space. Pl. CSUF ¶ 5; Def. CSMF ¶ 2. The driver of the vehicle behind Hackbart would not back up. Def. CSMF ¶ 6. Frustrated, Hackbart extended his left arm out the window of his vehicle and extended his middle finger to the driver. Pl. CSUF ¶ 6.

At that time, Elledge was in uniform traveling along Murray Avenue in the direction

opposite of Hackbart, and was driving a marked City of Pittsburgh police vehicle. Pl. CSUF ¶ 9. As Hackbart was giving the driver behind him the finger, he heard Elledge say "Don't flip him off." Pl. CSUF ¶ 8; Def. CSMF ¶ 9. Hackbart responded by directing the same gesture toward Elledge. Pl. CSUF ¶ 8; Def. CSMF ¶ 12. Elledge activated the lights on his patrol car and turned around on Murray Avenue so he was traveling in the same direction as Hackbart. Pl. CSUF ¶ 11. Seeing the lights on the police vehicle, Hackbart proceeded approximately one (1) block to a public parking lot where Elledge conducted a motor vehicle stop. Pl. CSUF ¶¶ 12 & 13; Def. CSMF ¶ 15.

Elledge approached Hackbart's vehicle and asked him for his driver's license and Social Security number. Plaintiff's Appendix D, Elledge Deposition (hereinafter "Pl. App. D, Elledge Depo") p. 11. Elledge told Hackbart that he was going to be cited for disorderly conduct "for flipping the guy off . . ." Pl. App. D, Elledge Depo p. 12. Elledge issued Hackbart a citation charging him with violation of Pennsylvania's Disorderly Conduct statute, specifically 18 PA. CONS. STAT. ANN. § 5503(a)(3). Pl. CSUF ¶ 16; Def. CSMF ¶ 16. In Section 20 of the citation, Elledge wrote: "Disorderly Conduct. Driver made an obscene gesture towards me. Flipped me off while driving by. Also flipped off another driver." Pl. App. E; Pl. App. D, Elledge Depo p. 13.

On June 12, 2006, Hackbart attended a hearing before a Magisterial District Judge in Pittsburgh Municipal Court. Pl. CSUF ¶ 20. Elledge did not attend the hearing. *Id.* The District Judge found Hackbart guilty of Disorderly Conduct and imposed a fine as well as court costs in the total amount of $119.75. Pl. CSUF ¶ 21. Hackbart filed a summary appeal from the judgment of the District Judge with the Allegheny County Clerk of Courts. Pl. CSUF ¶ 22. On October 17, 2006, Hackbart, with counsel, attended a hearing on his summary appeal at which the Assistant District Attorney withdrew the disorderly conduct charge against him. Pl. CSUF ¶¶ 23 & 24.

Hackbart then brought the instant action under 42 U.S.C. § 1983 and the First, Fourth and

Fourteenth Amendments to the Constitution of the United States against the City and Elledge. Hackbart alleges that the City has a custom, pattern, practice and/or policy of authorizing its officers to issue citations under Pennsylvania's disorderly conduct statute based upon the use of profane, but not obscene, language and gestures which are expressions protected by the First Amendment. It is further alleged that the City fails to appropriately train, supervise and discipline officers who issue disorderly conduct citations in violation of citizens' rights of free expression.

### III.   LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to FED. R. CIV. P 56(c), summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. To support denial of summary judgment, an issue of fact in dispute must be both genuine and material, *i.e.*, one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Id*. The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well. *Whiteland Woods, L.P. v. Township of West Whiteland,* 193 F.3d 177, 180 (3d Cir. 1999), *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P 56(e). Further, the nonmoving party cannot rely on

unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994).

**IV.   DISCUSSION**

   1.   Section 1983 First and Fourth Amendment Retaliation Claims

   Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. . .

42 U.S.C. § 1983.  While § 1983 is not itself a source of substantive rights, *Baker v. McCollan*, 443 U.S. 137 144 n.3 (1979), the section provides a remedy for violations of constitutional rights where the alleged violation was committed by a person acting under the color of state law. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995).

   To establish a *prima facie* case under § 1983, a plaintiff must show that the action occurred "under color of state law[1]" and that the action deprived the plaintiff of a constitutional right or a federal statutory right. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981).  The initial

---

   [1]   There is no dispute that Elledge was acting under color of state law.

4

question in a Section 1983 action, then, is whether the plaintiff has alleged a deprivation of a constitutional right. *See Donahue v. Gavin*, 280 F.3d 371, 378 (3d Cir. 2002) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)).

Hackbart has alleged a claim against the City and Elledge, pursuant to 42 U.S.C. § 1983, for retaliating against Hackbart for exercising his rights to free expression under the First Amendment. The Supreme Court has held that "[o]fficial reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected rights,' and the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256, (2006) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 588 n.10 (1998)). In general, to state a constitutional retaliation claim, a plaintiff must prove: (1) that he engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation. *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 282 (3d Cir. 2004). Whether the activity is protected is a question of law, while the remaining inquiries are questions of fact. *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006).

### A. Hackbart's Constitutionally-Protected Activity

The United States Supreme Court has long recognized that non-verbal gestures and symbols may be entitled to First Amendment protection. *See e.g. Texas v. Johnson*, 491 U.S. 397, 404 (1989)[2]. Moreover, several courts, including federal and state courts in Pennsylvania, have found that the expressive use of the middle finger is protected speech under the First

---

[2] In *Johnson*, the Supreme Court held that burning the United States flag in protest of the renomination of the president is communicative activity protected by the First Amendment. *Texas v. Johnson*, 491 U.S. at 406; *see also Cohen v. California*, 403 U.S. 15, 25 (1971) (holding that wearing a jacket which contained a four-letter expletive criticizing the draft is protected by the First Amendment); *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 514 (1969) (holding that wearing black armbands to school in protest of the Vietnam War is constitutionally-protected expression by the First Amendment).

Amendment. *See, e.g., Sandul v. Larion*, 119 F.3d 1250, 1255 (6th Cir. 1997)(Use of the words "f--k you" by driver while extending his middle finger to a group of protestors was clearly speech entitled to First Amendment protection); *Duran v. City of Douglas*, 904 F.2d 1372, 1378 (9th Cir. 1990)(Directing a series of expletives and an obscene hand gesture at police officer represented an expression of disapproval toward the officer, and therefore, falls within the protective umbrella of the First Amendment); *Nichols v. Chacon*, 110 F. Supp. 2d 1099, 1102 (W.D. Ark. 2000)(giving someone the finger is protected speech); *Brockway v. Shepherd*, 942 F. Supp. 1012, 1015 (M.D. Pa. 1996)(gesture with middle finger toward a police officer is protected speech and not obscene under the Pennsylvania disorderly conduct statute); *see also Commonwealth v. Kelly*, 758 A.2d 1284, 1288 (Pa. Super. 2000)(same).

Hackbart, in this instance, was expressing his frustration and anger when he gestured with his middle finger to both the driver behind him and to Elledge. Both gestures are protected expressions under the First Amendment, unless they fall within a narrowly limited category of unprotected speech such as obscene speech or fighting words. As stated above, Hackbart was charged with disorderly conduct under 18 PA. CONS. STAT. ANN. § 5503(a)(3). The statute reads in relevant part: "A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he . . . (3) uses obscene language, or makes an obscene gesture . . . .[3]" 18 PA. CONS. STAT. ANN. § 5503(a)(3). Both the United States District Court in *Brockway*[4] and the Pennsylvania Superior Court in *Kelly*[5] found

---

[3] For purposes of the statute, the definition of "obscene" is consistent with that applied for purposes of determining what material is not protected under the First Amendment. *Commonwealth v. Bryner*, 652 A.2d 909, 911-912 (Pa. Super. 1995) (applying test set forth in *Miller v. California*, 413 U.S. 15, 24 (1973)).

[4] The court found that because the gesture was not sexual in nature, the display of the middle finger was not "obscene" under *Miller*. *Brockway v. Shepherd*, 942 F. Supp. at 1016.

[5] The Superior Court held that the display of the middle finger to a highway construction worker was "an angry gesture having nothing to do with sex," and therefore, not

that the same expressive gestures used by Hackbart were not "obscene" for purposes of § 5503(a)(3).

Clearly, then, the gestures of Hackbart cannot be deemed obscene, and therefore unprotected speech in this case.

Nor can the Court find that the gestures by Hackbart were "fighting words." The unprotected category of speech called "fighting words" is an extremely narrow one. *Johnson v. Campbell*, 332 F.3d 199, 212 (3d Cir. 2003). The Supreme Court has defined "fighting words" as "those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-572 (1942); *see also Texas v. Johnson*, 491 U.S. at 409 (To be punishable, words must do more than bother the listener; they must be nothing less than an invitation to exchange fisticuffs.). To qualify as "fighting words," therefore, such words must be "likely to provoke the average person to retaliation, and thereby cause a breach of the peace." *Id.*

Hackbart's display of his middle finger from the inside of his vehicle, simply does not rise to the level defined by the Supreme Court as punishable. Moreover, as recently written:

> [T]he middle finger gesture serves as a nonverbal expression of anger, rage, frustration, disdain, protest, defiance, comfort, or even excitement . . . . The gesture has appeared on streets and highways, in schools, shopping malls, concert venues, stadiums, courts, execution chambers, in advertisements and on magazine covers, and even on the hallowed floors of legislatures. Although its meaning has remained relatively constant over time, the middle finger gesture - like the f-word - has become part of the American vernacular and, in the process, shed its "taboo status". . . [and such] excessive use of the gesture is causing it to lose its offensive impact.

41 U.C. DAVIS L. REV. 1403, 1407-1410(citations omitted). The gesture has become somewhat innocuous, and without more[6], Hackbart's display of his middle finger did not constitute fighting

---

obscene. *Commonwealth v. Kelly*, 758 A.2d at 1288.

   [6]   Elledge contends that Hackbart also "starting shaking his fist, grimacing his face" at the driver behind him. Pl. App. D, Elledge Depo p. 10. This conduct nonetheless falls woefully

7

words and is entitled to the full protection of the First Amendment.

> B. Elledge's Response Was Retaliatory and Was Motivated By Hackbart's Exercise of a Constitutional Right

In addition to demonstrating that he was engaging in protected activity, Hackbart must show that the vehicle stop by Elledge and the issuance of the citation for disorderly conduct constituted retaliation for his exercise of First Amendment rights. Finally, Hackbart must prove his constitutionally protected hand gesture was a substantial or motivating factor in Elledge's decision to stop his vehicle and issue a citation for disorderly conduct. *Eichenlaub v. Twp. of Indiana*, 385 F.3d at 282; *Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997).

Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under § 1983. *White v. Napoleon*, 897 F.2d 103, 111-112 (3d Cir.1990); *Carter v. Dragovich*, 1999 U.S. Dist. LEXIS 11389 at 7 (E.D. Pa. July 27, 1999). Moreover, in this instance Elledge conducted a traffic stop[7] of Hackbart shortly after Hackbart gave him the middle finger which was also a violation of Hackbart's right to be free of unreasonable searches and seizures under the Fourth Amendment. Elledge's response to Hackbart's exercise of his First Amendment right was to initiate a traffic stop and issue a citation for disorderly conduct. Clearly, Elledge's conduct was an adverse action in response to Hackbart flipping him off. The citation given to Hackbart clearly states why Elledge stopped and cited him: "Driver made an obscene gesture towards me. Flipped me off while driving by. Also flipped off another driver." Pl. App. E; Pl. App. D, Elledge Depo p. 13. The Court finds Elledge's conduct retaliatory.

The Third Circuit has recognized that a suggestive temporal proximity between the

---

shy of the conduct defined as punishable by the Supreme Court in *Texas v. Johnson*.

[7] A traffic stop is a "seizure" within the meaning of the Fourth Amendment, "even though the purpose of the stop is limited and the resulting detention quite brief." *United States v. Delfin-Colina*, 464 F.3d 392, 396 (3d Cir. 2006)(quoting *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)); *see also United States v. Arvizu*, 534 U.S. 266, 273 (2002); *United States v. Wilson*, 413 F.3d 382, 386 n.3 (3d Cir. 2005).

protected activity and the alleged retaliatory action can be probative of causation. *See Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001); *see also Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003)( "even if timing alone could ever be sufficient to establish a causal link, . . . the timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive before a causal link will be inferred"). In this instance, the Court finds both the temporal proximity and Elledge's admission on the face of the citation evidence that Hackbart's expressive conduct was the motivating factor for Elledge violating his rights under the First and Fourth Amendments.

Elledge argues that when he made the traffic stop he had a reasonable and articulable suspicion that Hackbart was in violation of the law, and points to Elledge's "[stopping] the flow of traffic for 30 seconds on Murray Ave. during moderately to busy traffic." Defendants' Memorandum in Support p. 6. Elledge, however, did not issue a citation for a violation of the Pennsylvania Motor Vehicle Code[8]. Nor did Elledge mention such criminal conduct in the disorderly conduct citation.

Accordingly, the Court finds that Elledge's response to Hackbart's exercise of his right to freedom of expression was retaliatory, as well as a violation in its own right of Hackbart's Fourth Amendment right to be free from an unreasonable seizure, and was motivated by Hackbart giving him the finger. Unless, Elledge is entitled to qualified immunity, Hackbart's motion for summary judgment must be granted.

2.  Qualified Immunity

Claims of qualified immunity are to be evaluated using a two-step process. First, the court must determine whether the facts, taken in the light most favorable to the plaintiff, show a constitutional violation. *Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir. 2001). If Hackbart fails to make out a constitutional violation, the qualified immunity inquiry is at an end, and Elledge is entitled to immunity. The Court has determined that Hackbart has shown violations of his First

---

[8] The Court searched the Motor Vehicle Code and was unable to find a violation for attempting to parallel park on a moderately to busy street.

and Fourth Amendment rights.  The Court must move on to the second step: determine whether the constitutional right was clearly established.  *Id.*

Elledge first argues that he is entitled to qualified immunity as a matter of law because he had probable cause to stop Hackbart and issue the citation.  A seizure by a law enforcement officer without a warrant "is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146 (2004). "Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge [at the moment the arrest was made] are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Estate of Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir. 2003)(citing *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir.1995)); *see also United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002) ("Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested.").

A court must evaluate the "totality of the circumstances" in ascertaining whether there is probable cause. *Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir. 1997. "[T]he standard does not require that officers correctly resolve conflicting evidence or that their determinations of credibility were, in retrospect, accurate." *Wright v. City of Phila.*, 409 F.3d 595, 603 (3d Cir. 2005). The determination of whether a law enforcement officer had probable cause to arrest is generally a question for the jury in a § 1983 action. *Deary v. Three Un-Named Police Officers*, 746 F.2d 185, 192 (3d Cir. 1984). However, "where no genuine issue as to any material fact exists and where credibility conflicts are absent, summary judgment may be appropriate." *Id.* The question of probable cause is one for the jury only when sufficient evidence exists that would allow a jury to reasonably conclude that a police officer did not have probable cause to arrest. *Sharrar*, 128 F.3d at 818.

As set forth above, the Court does not find Elledge had probable cause for either the traffic stop or the citation. The traffic stop was in retaliation for Hackbart's hand gesture toward Elledge, and the citation for: "Disorderly Conduct. Driver made an obscene gesture towards me. Flipped me off while driving by. Also flipped off another driver." Elledge admitted, however, that the hand gesture was neither illegal nor obscene. Pl. App. D, Elledge Depo p. 87-88. There is no evidence in this record that would allow a juror to find that Elledge had a reasonable belief that an offense had been, or was being, committed by Hackbart.

Because the Court finds no probable cause in this instance, the final step is to determine whether Elledge's conduct violated a clearly established constitutional right. By 2006, numerous federal courts, including a United States District Court in Pennsylvania, had ruled that the middle finger gesture was constitutionally protected speech. *See, e.g., Sandul v. Larion*, 119 F.3d 1250, 1255 (6th Cir. 1997)(Use of the words "f--k you" by driver while extending his middle finger to a group of protestors was clearly speech entitled to First Amendment protection); *Duran v. City of Douglas*, 904 F.2d 1372, 1378 (9th Cir. 1990)(Directing a series of expletives and an obscene hand gesture at police officer represented an expression of disapproval toward the officer, and therefore, falls within the protective umbrella of the First Amendment); *Nichols v. Chacon*, 110 F. Supp. 2d 1099, 1102 (W.D. Ark. 2000)(giving someone the finger is protected speech); *Brockway v. Shepherd*, 942 F. Supp. 1012, 1015 (M.D. Pa. 1996)(gesture with middle finger toward a police officer is protected speech and not obscene under the Pennsylvania disorderly conduct statute). In addition, the Pennsylvania Superior Court had determined that such gesture was not "obscene" within the meaning of the disorderly conduct statute. *Commonwealth v. Kelly*, 758 A.2d 1284, 1288 (Pa. Super. 2000).

In *Brockway*, the district court held that the display of the extended middle finger in a show of disrespect was not an obscene gesture within the meaning of relevant Supreme Court opinions and does not amount to fighting words. The court ruled the display was therefore protected by the First Amendment. The court, however, held that the officer was entitled to

qualified immunity because the passenger's right not to be arrested for making the gesture was not clearly established at the time of the arrest in January of 1996, but cautioned:

> It is important, however, at some point to establish firmly the right in question. We therefore emphasize: The use of profane or vulgar language is protected by the First Amendment unless some exception to the general protection applies. That is, standing alone, profane or vulgar language is not itself obscene and does not amount to fighting words. The same principle applies to the use of a gesture which represents profane or vulgar language, and the communication must be looked at in its entirety and in context to determine whether an exception to the general protection of speech applies.

*Brockway v. Shepherd*, 942 F. Supp. at 1017.

The Court of Appeals for the Sixth Circuit held in 1997 that the police officer who arrested a man for giving a group of protestors the middle finger and shouting "f--k you" as he drove by in his truck was "not entitled to qualified immunity because his actions violated [plaintiff's] clearly established First Amendment rights of which a reasonable officer should have known." *Sandul v. Larion*, 119 F.3d at 1256-1257; *see also Duran v. City of Douglas*, 904 F.2d at 1378 ("No less well established is the principle that government officials in general, and police officers in particular, may not exercise their authority for personal motives, particularly in response to real or perceived slights to their dignity."); *Nichols v. Chacon*, 110 F. Supp. 2d at1110 (police officer not entitled to qualified immunity for issuing a disorderly conduct citation in violation of clearly established rights under First and Fourteenth Amendment for plaintiff's giving the officer the finger.).

Moreover, the City of Pittsburgh's own training materials instruct that the middle finger gesture is not obscene for purposes of disorderly conduct. A City of Pittsburgh Legal Update Course dated September 14, 2001, titled "Disorderly Conduct - Obscene Language or Gesture, states:

> The phrase"f-k you a–hole" and the gesture of the "finger" are not obscene for the purposes of disorderly conduct when they are used in anger and not in a sexual manner. Words and gestures are not obscene because they are disrespectful or insulting. . .

Pl. CSUF ¶ 47.

Accordingly, the Court finds that Hackart's First Amendment right to freedom of expression by giving someone the "finger" was clearly established in April of 2006 when Elledge initiated a traffic stop and issued a citation for disorderly conduct for making an obscene gesture. As such, Elledge is not entitled to qualified immunity. Summary judgment will be entered against Elledge for violation of Hackart's rights under the Constitution of the United States.

3.  The City's Liability Under Section 1983

Defendants argue that Plaintiff has failed to demonstrate the existence of a policy, practice or custom that deprived him of some federally secured right. The Supreme Court has long held that:

> A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). "Policy is made when a decision maker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Kniepp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996) (citation omitted). Customs are "'practices of state officials ... so permanent and well settled' as to virtually constitute law." *Id.* (quoting *Monell*, 436 U.S. at 691). In addition, the plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997). A plaintiff can establish municipal liability under § 1983 by showing that a municipal employee acted pursuant to a formal government policy or by standard operating procedure long accepted within the government entity. *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 737 (1989).

Plaintiff argues that the City failed to adequately train, supervise and discipline police officers who issue disorderly conduct citations in violation of a person's rights under the First

Amendment. Failure to train claims are analyzed as a species of "custom or practice" liability. *Owens v. City of Phila.*, 6 F. Supp. 2d 373, 387 (E.D. Pa. 1998). The scope of an action for failure to train is narrow and cannot be proven by showing that a different training program would have been more effective. *Grazier v. City of Phila.*, 328 F.3d 120, 125 (3d Cir. 2003). Liability against a municipality under § 1983 can only be found where "the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996).

These strict standards exist because "in enacting § 1983, Congress did not intend to impose liability on a municipality unless deliberate action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights." *Oklahoma v. Brown*, 520 U.S. 397, 399 (1997). To sustain a claim based upon inadequate training, a plaintiff must show that a responsible municipal policymaker had contemporaneous knowledge of the offending occurrence or knowledge of a pattern of prior incidents of similar violations of constitutional rights and failed to take adequate measures to ensure the particular right in question or otherwise communicated a message of approval to the offending subordinates. *See City of Canton*, 489 U.S. at 390; *Montgomery v. DeSimone*, 159 F.3d 120, 127 (3d Cir. 1998); *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1059-1070 (3d Cir. 1991), *cert. denied*, 503 U.S. 985, 118 L. Ed. 2d 391, 112 S. Ct. 1671 (1992).

Further, a municipality may be liable under § 1983 for a failure to train subordinate officers only where such failure reflects a policy of deliberate indifference to the constitutional rights of citizens. *See City of Canton v. Harris*, 489 U.S. 378, 390-391 (1989); *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999). The same standard applies to claims of inadequate supervision. *See Groman v. Township of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995).

Deliberate indifference can be shown by demonstrating that a constitutional violation is

sufficiently foreseeable.  A violation may be foreseeable when "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. at 390. Additionally, inaction in the face of complaints concerning violations can also demonstrate deliberate indifference. *Id.* at 390 n.10. (Police officers who, in exercising their discretion,  violate constitutional rights so often "that the need for further training must have been plainly obvious to the city policymakers, who, nevertheless, are 'deliberately indifferent' to the need."); *see also Carswell v. Borough of Homestead*, 381 F.3d 235, 244 (3d Cir. 2004) ("A plaintiff must identify a municipal policy or custom that amounts to deliberate indifference to the rights of people with whom the police come into contact . . .).  Identifying a municipal policy or custom amounting to deliberate indifference "typically requires proof of a pattern of underlying constitutional violations." *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000). Proving deliberate indifference in the absence of such a pattern is a difficult task, "although it is possible." *Carswell v. Borough of Homestead*, 381 F.3d at 245.  Additionally, there must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *See Brown v. Muhlenberg Twp.*, 269 F.3d 205, 214 (3d Cir. 2001).

  Therefore, evidence of prior complaints and of inadequate procedures for investigating such complaints can suffice to create a jury question concerning municipal liability. *See Beck v. City of Pittsburgh*, 89 F.3d at 974-976 (reviewing evidence concerning procedures and holding that "Beck presented sufficient evidence from which a reasonable jury could have inferred that the City of Pittsburgh knew about and acquiesced in a custom tolerating the tacit use of excessive force by its police officers"). The Third Circuit uses a three-part test to determine whether municipality acts with deliberate indifference: "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause

15

deprivation of constitutional rights." *Carter v. City of Philadelphia*, 181 F.3d at 357 (citing *Walker v. City of N.Y.*, 974 F.2d 293, 298 (2d Cir. 1992)).

There is more than sufficient evidence in the record to create a jury question concerning municipal liability in this case. Specifically, Hackbart has submitted evidence of 188 citations issued by City of Pittsburgh police officers between March of 2005 and October of 2007 charging persons with disorderly conduct for using profane language and/or "obscene" hand gestures. *See* Pl. CSUF ¶ 56. In the majority of the citations, the defendants have been charged under §5503(a)(3) of the disorderly conduct statute, although many citations describe conduct that may certainly be charged under §5503(a)(1), which proscribes fighting or threatening conduct, or violent behavior, or under §5503(a)(4), which proscribes conduct which creates a hazardous or physically offensive condition.

The Court finds no need to reiterate all the relevant evidence in the current record that would create a question of fact on the question of municipal liability. Suffice it to say that, at this stage of the litigation, the Court finds a material issue of fact with regard to the following:

      (a)    whether there was municipal policy or custom amounting to deliberate indifference to the constitutional rights of citizens;

      (b)    whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation;

      (c)    whether a responsible City policymaker had contemporaneous knowledge, or should have had such knowledge, of the offending pattern of prior incidents of similar constitutional violations; and

      (d)    whether a responsible City policymaker failed to take adequate remedial measures.

Accordingly, both the City's and Hackbart's motions for summary judgment regarding municipal liability will be denied.

## V.     CONCLUSION

Based on the foregoing, the Court will deny Defendants' motion for summary judgment, and grant Hackbart's motion for summary judgment with regard to his claim against Elledge under 42 U.S.C. § 1983, alleging violation of his rights under the First, Fourth and Fourteenth Amendments. The remainder of Hackbart's motion shall be denied. An appropriate order follows.

Cercone, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DAVID HACKBART,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 2:07cv157 |
| ) | **Electronic Filing** |
| **THE CITY OF PITTSBURGH,** and **SGT.** ) | |
| **BRIAN ELLEDGE,** ) | |
| ) | |
| Defendant. ) | |

### ORDER OF COURT

AND NOW, this 23rd day of March, 2009, upon consideration of Cross-Motions for Summary Judgment filed on behalf of the parties, the responses to the motions, and the briefs and appendices filed in support thereof, in accordance with the Memorandum Opinion filed herewith,

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (**Document No. 30**) is **DENIED**. Plaintiff's Motion for Summary Judgment (**Document No. 34**) is granted in part and denied in part. Plaintiff's motion is **GRANTED** with regard to his claim against Defendant Elledge under 42 U.S.C. § 1983, alleging violation of his free speech rights under the First Amendment and violation of his right to be free of unreasonable search and seizure under the Fourth Amendment. Plaintiff's motion is **DENIED** in all other respects.

s/ David Stewart Cercone
David Stewart Cercone
United States District Judge

cc:   Thomas J. Farrell, Esquire
   Valerie M. Antonette, Esquire
   Reich, Alexander, Reisinger & Farrell, LLC
   436 Seventh Avenue
   Suite 1000
   Koppers Building
   Pittsburgh, PA 15219

Witold J. Walczak, Esquire
Sara J. Rose, Esquire
American Civil Liberties Foundation
313 Atwood Street
Pittsburgh, PA 15213

Michael E. Kennedy, Esquire
George R. Specter, Esquire
City of Pittsburgh Law Department
313 City-County Building
414 Grant Street
Pittsburgh, PA 15219

Bryan Campbell, Esquire
220 Grant Street
6th Floor
Pittsburgh, PA 15219